GEORGE S. SILZER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85160. Promulgated May 16, 1939.

*George S. Silzer* pro se.
*Loren P. Oakes, Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency of $1,760.41 in income tax for 1932. It is alleged in the petition that the respondent erred in the determination of the deficiency by disallowing the deduction from gross income of $50,000 claimed as a bad debt. The material facts have been stipulated as follows:

1. The petitioner is an individual with his offices at 744 Broad Street, City of Newark, State of New Jersey.

2. The taxes in controversy are income taxes for the year 1932 and in the amount of $1,760.41; $50,000.00 loss being claimed by George S. Silzer.

3. Notice of deficiency was mailed to the petitioner on May 15, 1936.

4. On September 12, 1927 petitioner sold Broad and Market National Bank & Trust Company stock (such stock having been erroneously described in the petition and deficiency notice herein as New Jersey National Bank and Trust Company stock) to John J. Stamler, who paid part of the purchase price therefor, and gave his interest-bearing note for $127,000.00 to petitioner in

payment of the balance due on such sale and accompanied said note with 2800 shares of New Jersey National Bank & Trust Company stock and 142½ shares of Improvement Realty Company stock as collateral security for said note. Petitioner was the payee of such note and endeavored to discount it by endorsing it without recourse but was not successful in that endeavor.

5. Consequently, on or about October 1, 1927, petitioner discounted the above note at the Perth Amboy Trust Company, Perth Amboy, New Jersey, by making a general endorsement of the note whereby the note was negotiated to such bank. Such bank paid petitioner the sum of $127,000.00 less the normal discount to cover 6% interest for the period in question and the above bank thereupon became the owner of the above note.

6. The profit made by petitioner upon the sale of the above stock was duly reported in petitioner's income tax return for 1927. Such return and all other income tax returns by petitioner, including the income tax return filed by petitioner for the year 1932, were on a cash receipts and disbursements basis.

7. The above note was transferred by the Perth Amboy Trust Company to the New Brunswick Trust Company on April 7, 1931. It was transferred by the New Brunswick Trust Company to Perth Amboy Trust Company on July 1, 1931. On October 7, 1931, the above note was again transferred by Perth Amboy Trust Company to New Brunswick Trust Company. The said note was at all times accompanied by 2800 shares of New Jersey National Bank & Trust Company stock, and 142½ shares of Improvement Realty Company stock. This stock in such companies was in the name of John J. Stamler and was collateral security for the payment of said note. The 2800 shares of New Jersey National Bank & Trust Company which at the time in 1927 when it was given as collateral was worth much more than the $50,000.00 claimed as a deduction on petitioner's 1932 return became worthless when said Bank went into bankruptcy and receivership in 1932.

8. On or about July 11, 1932, the New Brunswick Trust Company as the owner of the above note bearing petitioner's endorsement called upon petitioner to discharge his liability by reason of such endorsement and petitioner thereupon gave his personal note to the New Brunswick Trust Company to cover the amount of his liability as endorser of the above note. And the bank held as further collateral to the said note the said 2800 shares of the New Jersey National Bank & Trust Company and the 142½ shares of the Improvement Realty Company. They also held and now hold the original note which the Perth Amboy Trust Company had delivered to them on October 7, 1931. No part of such personal note signed by petitioner had been paid by the end of the year 1932.

9. On October 14, 1932, the above John J. Stamler filed a voluntary petition in bankruptcy. After the filing of the above bankruptcy petition and prior to December 31, 1932, it resulted that the amount due from Stamler on the above note signed by him in 1927 was uncollectible to the extent of at least $50,000.00. The New Jersey National Bank & Trust Company also in 1932 became bankrupt and said stock is worthless.

10. It is also stipulated and agreed that petitioner's income tax returns for the years 1927 and 1932 are to be received in evidence.

The petitioner's income tax return for 1927 shows that in that year he sold 2,715 shares of Broad & Market National Bank & Trust Co., of Newark, New Jersey, for $705,900; that the cost was $462,-

560.64; and that the petitioner realized a gain from the sale of $243,339.36, which was included in gross income.

In his income tax return for 1932 the petitioner claimed the deduction from gross income of $50,000 as a bad debt. The $50,000 represents the uncollectible amount of the Stamler note at the end of 1932. The respondent has disallowed the claimed deduction in the determination of the deficiency.

It is the petitioner's contention that in view of the stipulated fact "that the amount due from Stamler on the above note signed by him in 1927 was uncollectible to the extent of at least $50,000.00" at the end of 1932 he is entitled to deduct from his gross income as a bad debt the $50,000 in question. It is the respondent's contention, on the other hand, that the petitioner is not entitled to claim the deduction by reason of the fact that by the giving of his own promissory note as additional collateral to the New Brunswick Trust Co. he has not suffered any diminution of his assets; that the petitioner upon the sale of his 2,715 shares of Broad & Market National Bank & Trust Co., of Newark, New Jersey, received the purchase price in cash except to the extent of $127,000 covered by an interest-bearing note; that this note was discounted at a bank and the petitioner received the proceeds of the note; and that the petitioner, not having paid out any cash in 1932, is not entitled to the deduction claimed.

We think that the contention of the respondent is correct in accordance with numerous court and Board decisions. In *Eckert* v. *Burnet*, 283 U. S. 140, the facts were that the taxpayer and his partner were joint endorsers of notes issued by a corporation that they had formed. In 1925 the taxpayer and his partner gave a joint note in settlement of their liability as endorsers. The Supreme Court held that where the taxpayer was on a cash basis no deduction was allowable. The Court, speaking through Mr. Justice Holmes, used the following language:

* * * For the purpose of a return upon a cash basis there was no loss in 1925. As happily stated by the Board of Tax Appeals the petitioner "merely exchanged his note under which he was primarily liable for the corporation's notes under which he was secondarily liable, without any outlay of cash or property having a cash value." A deduction may be permissible in the taxable year in which the petitioner pays cash. The petitioner says that it was definitely ascertained in 1925 that the petitioner would sustain the losses in question. So it was, if the petitioner ultimately pays his note. * * *

In *Frank Kuhn*, 34 B. T. A. 274, this Board said:

Although the petitioner states his familiarity with the rule of *Eckert* v. *Burnet*, 283 U. S. 138, and other cases,[1] that a taxpayer on the cash basis

---

[1] *N. R. Davis*, 9 B. T. A. 755 (reversed on mandate, C. C. A., 7th Cir., without opinion) ; *Morris Sass*, 12 B. T. A. 156 ; 17 B. T. A. 261 ; *Edmond A. Hughes*, 27 B. T. A. 1022.

**844**

may not deduct, either as a sustained loss or a debt ascertained to be worthless, the amount of a note made by him as primary obligor in substitution for a note given by another upon which the taxpayer had theretofore been a secondary obligor, until he pays on the note, he urges that this rule is inapplicable where the new note given by the taxpayer is collaterally secured by his pledge of property. * * *

*Edmund A. Hughes*, 27 B. T. A. 1022, is another case to the same effect. Likewise, in *Max Gross*, 36 B. T. A. 759, the Board said:

* * * A taxpayer reporting on a cash receipts and disbursement basis can be allowed only such loss deductions as represent actual outlays of cash or property in the taxable year and the claimed deduction here is not of that character. *Eckert v. Burnet*, 283 U. S. 140; *A. F. Osterloh*, 13 B. T. A. 713; affd., 37 Fed. (2d) 277; *Morris Sass*, 17 B. T. A. 261; *James Klein Bowen*, 27 B. T. A. 824; *Edmond A. Hughes*, 27 B. T. A. 1022; *Frank Kuhn*, 34 B. T. A. 274.

The disallowance by the respondent of the claimed deduction of $50,000 is approved.

*Judgment will be entered for the respondent.*