Talbot PATRICK and Commercial Bank of Charlotte, Administrator of the Estate of Alethia M. Patrick, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2648.

United States District Court
W. D. South Carolina,
Rock Hill Division.

June 23, 1960.

Robert M. Ward, Rock Hill, S. C., for plaintiffs.

Joseph E. Hines, U. S. Atty., Spartanburg, S. C., Howard A. Heffron, Acting Asst. Atty. Gen., James P. Garland, Myron C. Baum, Robert Livingston and Leon W. Vaseliades, Attys., Dept. of Justice, Washington, D. C., for defendant.

WYCHE, Chief Judge.

This is an action to recover income tax in the amount of $21,673.73 paid by taxpayers for the year 1956, under alleged erroneous and illegal deficiency assessments.

The action is brought in the names of Talbot Patrick, individually, and Commercial Bank of Charlotte, North Carolina, as Administrator of the Estate of Alethia M. Patrick, deceased, since the 1956 return, sued on, was a joint return.

The record in this case includes the pleadings, testimony of Talbot Patrick, depositions of C. W. F. Spencer, Jr., Esq. and John H. Lumpkin, Esq., taxpayers' income tax return for the calendar year 1956, and a stipulation of counsel for both parties which incorporates a property settlement agreement, a trust agreement, and taxpayers' claim for refund of the taxes now sued for.

Taxpayer Talbot Patrick was sued for divorce by his then wife Paula M. Patrick on December 16, 1955. The complaint sought an absolute divorce, court supervision of division of properties, an appropriate property settlement in favor of the wife, custody of the children of the marriage and counsel fees. Talbot Patrick filed an answer which neither admitted nor denied the allegations of adultery, claimed as the ground for divorce. He did not offer testimony at the hearing. While the divorce action was pending, counsel for the parties carried on extended negotiations on the question of property settlement, which ultimately resulted in the agreement which is incorporated in the stipulation by counsel in this case. The Court of Common Pleas for York County issued its final decree of absolute divorce, approving the property settlements theretofore made, and, by reference, requiring the payment by Talbot Patrick of counsel fees. These fees, by agreement of counsel and the parties, were $12,000 for each of the two law firms involved, a total of $24,000, and were allocated $4,000 for the handling of the divorce, $4,000 for the handling of the business real estate, and $16,000 for the rearranging of stock ownership and control of the Herald Publishing Company. Of the $4,000 charged for the handling of the business real estate settlement, $3,200 was charged against Talbot Patrick, who theretofore had owned four-fifths undivided interest in same, and $800 was charged against Paula M. Patrick, who had owned one-fifth thereof. The $800 is not an issue in this case. In April 1958, the Internal Revenue Service disallowed Talbot Patrick's claim of $3,200 shown on his 1956 return as a business expense, which is a part of the tax which taxpayers seek to recover in this action.

Prior to the payment of any of the attorneys' fees, there was an agreement among all the stockholders and officers of Herald Publishing Company that $16,000 of the attorneys' fees would be paid by Herald Publishing Company under a proviso that if this was not allowed as a business expense deduction by the corporation, it then would be repaid to the corporation by Talbot Patrick. In January, 1959, the Internal Revenue Service rejected the deduction of the $16,000 as a business expense by the corporation as not being a proper corporate expense. The corporation paid an additional tax of $8,320. The Internal Revenue Service then designated the $16,000 as a dividend

to Talbot Patrick and he was required to pay income tax thereon. This is a part of the tax which taxpayers seek to recover in this action.

In 1959, pursuant to the 1956 commitment, Talbot Patrick paid back to Herald Publishing Company the $16,000 with interest. Taxpayers' claim that this was a 1956 deductible business expense of Talbot Patrick was disallowed. This also is a part of the tax for which taxpayers sue.

There is a further small item of adjustment of allowable medical expense set out in the claim and the complaint.

In May 1959, taxpayers filed with the Internal Revenue Service timely claim for refund of $21,673.73, with interest, which was rejected, and this suit was then instituted.

The $16,000 in attorneys' fees paid by Herald Publishing Company in 1956, and, by prior agreement, repaid to Herald Publishing Company by Talbot Patrick in 1959, in my opinion, was not a dividend to Talbot Patrick.

Talbot Patrick had a legal duty to pay these attorneys' fees. Paragraph 11 of the "Amended Stipulation and Agreement" between the parties to the original action, required Talbot Patrick to pay plaintiff's attorneys' fees, and, he, of course, had a duty to pay his own counsel. This agreement was adopted, confirmed, and made a part of the court's final order in the divorce decree. The $16,000 was charged against the corporation under an agreement that if not allowed as a proper corporate deduction, it would be repaid by Talbot Patrick. This repayment agreement was made prior to payment of the fees by the corporation and the sum was repaid by Talbot Patrick to the corporation.

■ Where there is an intent to repay an advance by a corporation to pay a stockholder's obligation it is treated as a loan and not as a constructive dividend. Ortmayer v. C.I.R., 7 Cir., 265 F.2d 848.

■ In this case there is no question of intent to repay. Further, the agreement to repay the corporation was not a retroactive device to minimize taxes, but was made prior to the payment of any part of the funds by the corporation, and Talbot Patrick received no ultimate benefit from the transaction. Rosencrans v. Commissioner, 13 TCM 176.

In my opinion, the $16,000 was a loan and not a dividend.

■ The $3,200 and the $16,000 paid by Talbot Patrick as attorneys' fees were deductible as expenses incurred for the management, conservation or maintenance of property held for the production of income.

■ Adultery is a ground for absolute divorce in South Carolina, and Talbot Patrick made no defense. His wife was entitled to a substantial property settlement and all of his property was at risk until settlement was made. Only $4,000 of the attorneys' fees were allocated to the question of divorce, and these fees were properly treated as personal expenses and not claimed as deductible, nor was any of the property settlement or support claimed as deductible.

The $3,200 in fees were charged for, allocated to, and paid for the services rendered by counsel in the settling of the question of division of the business real estate in such a way as to maintain its uninterrupted use by the newspaper publishing company. After the settlement Talbot Patrick did not own the four-fifths interest therein, that passing into a trust, from which the newspaper was obliged to lease. This amount of fees was deductible by Talbot Patrick.

The $16,000 was charged for, allocated to, and paid for the services of counsel in negotiating a property settlement which resulted in Talbot Patrick's being able to retain actual control of the newspaper corporation, together with his salary as an officer and as editor and publisher. The stock which he found it necessary to buy in order to maintain this actual control had a peculiar and special value to him in this situation, and he paid full value for it but received only the control

and use of the stock, with ownership tied up for his children.

When a wife makes reasonable claims which threaten the husband with the loss of his source of taxable income, the amount of the fees paid to the attorneys which is allocable to the settlement of the wife's claim is deductible. Bowers v. Commissioner of Internal Revenue, 6 Cir., 243 F.2d 904; Baer v. Commissioner of Internal Revenue, 8 Cir., 196 F.2d 646.

In Owens v. C.I.R., 5 Cir., 273 F.2d 251, 256, the court allowed as deductible a legal fee of $7,500 paid by the husband to the wife's attorneys in working out a settlement of a divorce action in which the wife gave up her community property right to one-half of the stock in a lumber company owned by the husband and from which he derived his taxable income. After deciding that the weight of authority favored the deduction, as in the Baer and Bowers cases, supra, the court said that the fact that the payments in question were made to the wife's attorneys rather than to the husband's was inconsequential and said, "We do not think that the fact that the payment here was made to the wife's attorney has any determinant force. * * * The ultimate and only fact before the Tax Court and before us was and is whether the $7,500 was actually paid to the attorney in connection with the saving of the business in which the husband was interested. * * * In other words, the domestic dispute furnished the occasion, but not the motive, for the payment of the $7,500 to the attorney."

The only case in which this question has come before the Fourth Circuit Court of Appeals is Richardson v. Com. of Internal Revenue, 4 Cir., 234 F.2d 248. There the court disallowed $2,500 in attorneys fees on the ground that the legal services were rendered to prevent the imposing of liability on taxpayer for the wife's support. The court in that case, however, distinguished it from the Baer case and inferentially approved the holding in the Baer case.

In my opinion, the facts in this case show that the Baer case is applicable to this case. The divorce suit could not have been defended on its merits. There were no disputed questions of fact as to the grounds for divorce in South Carolina, or as to the custody of the minor children. The only questions presenting serious difficulties were those pertaining to the property settlement and the apportionment of jointly owned property. If Paula M. Patrick had retained her 28% stock interest in Herald Publishing Company and had continued to own, as trustee, a one-half interest in the stock held in trust for her two minor children, Wayne and Paula Elizabeth, and had had the support of her adult son, Hugh, she would have controlled the publishing company and could have discharged the taxpayer Talbot Patrick from his salaried positions as president of the publishing company and its editor and publisher. This would have imposed upon Paula M. Patrick, however, the responsibility of providing the corporation with competent leadership and continuing the newspaper in Rock Hill. Paula M. Patrick and her attorneys, after surveying the field, thought that the present management of the corporation and the editorial policies of the newspaper were sound, and entered into a stipulation and settlement which preserved Talbot Patrick's taxable income. Taxpayer Talbot Patrick's liability for the attorneys' fees claimed would not have been incurred except for these problems relating to his income and income-producing property.

The claim by the Government that the $16,000 in attorneys' fees cannot be claimed as a deduction by the taxpayer for 1956, because not paid in the tax year 1956, is fallacious.

If it were held that this was a constructive dividend to Talbot Patrick, then it passed to him in the year 1956, and paid the legal fees for which he was obligated.

The $16,000 was a loan to Talbot Patrick which was paid out in his behalf in 1956, and the payment of the $16,000

by Talbot Patrick in 1959, amounted to a repayment of this only and is not to be confused with the actual payment of the fees in the tax year 1956.

Generally such a question as is here presented is raised when a taxpayer attempts to claim in a subsequent year deductions which are held to have been paid in the year the expense actually was incurred, and the decisions have uniformly allowed such deductions only in the year in which the debt actually was paid or was incurred.

■ It has been held many times that when deductible expenses are paid by a cash-basis taxpayer with borrowed funds, or paid on his behalf by someone else whom he is obligated to repay, the expenses must be deducted in the year they were paid and not when the borrowings or loans were repaid. A.W.D. Weis v. Commissioner, 13 B.T.A. 1284; R. B. Keenan v. Commissioner, 20 B.T.A. 498. A recent case precisely in point is Segall v. Commissioner, 30 T.C. 734. There taxpayer's controlled corporation paid a legal fee, for working on a tax case against the taxpayer, in 1947, and claimed that the legal fee was a corporate tax deduction for that year. This claim was disallowed. In 1950, the taxpayer repaid the amount of the fee to the corporation and claimed the deduction personally for that year. The court said that whether the transaction was a loan or a constructive dividend, which was used by the taxpayer to pay the legal fee, the payment of the fee was in 1947, and the deduction would be proper only in that year, not in 1950.

The $16,000 was a proper business expense deduction for Talbot Patrick for the year 1956, and should be so allowed.

For the foregoing reasons, it is my opinion that plaintiffs' claim for refund should be allowed.

This opinion will stand as the findings of fact and conclusions of law in this cause under Rule 52(a). Rules of Civil Procedure, 28 U.S.C.A.

Plaintiffs are therefore entitled to judgment in an amount to be computed by the Internal Revenue Service in accordance with findings of fact, conclusions of law and order herein, together with interest thereon, and

It is so ordered.