ALBERT H. PAYNE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Payne v. Commissioner
Docket No. 16426-84.
United States Tax Court
T.C. Memo 1986-93; 1986 Tax Ct. Memo LEXIS 514; 51 T.C.M. (CCH) 579; T.C.M. (RIA) 86093; March 10, 1986. Albert H. Payne, pro se. Irene Scott Carroll, for the respondent. AARONS
MEMORANDUM OPINION AARONS, Special Trial Judge: This case was assigned to Special Trial Judge Lehman C. Aarons pursuant to section 7456(d)(3) of the Internal Revenue Code and Rules 180, 181 and 182 of the Tax Court Rules of Practice and Procedure.[1]
Respondent *516 determined a deficiency in petitioner's 1980 Federal income tax in the amount of $5,484, along with an addition to tax under section 6653(a) in the amount of $274. After concessions by both parties, the remaining issues to be decided are: (1) whether petitioner is entitled to certain Schedule C deductions claimed in relation to his engineering services business; (2) whether petitioner was in the trade or business of being an income tax consultant, and if so, whether his deductions claimed for his business are allowable; (3) whether petitioner is liable for self-employment tax; and (4) whether petitioner can carry back to 1980 a net operating loss generated in 1983. To the extent stipulated, the facts are so found. Petitioner resided in Los Angeles, California, at the time he filed his petition. Petitioner filed his 1980 Federal income tax return under "married filing separately" status. His wife throughout 1980 was Shirley M. Payne. Petitioner and Mrs. Payne were subsequently divorced and she is not a petitioner herein. Preliminarily, a fundamental principle common to all issues in this case must be noted. The issues are primarily factual. The *517 factual determinations made by respondent in his notice of deficiency are presumed to be correct. Petitioner bears the burden of establishing error in those determinations. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). For clarity, facts and law will be combined under the following headings. ENGINEERING SERVICES EXPENSES During 1980 petitioner worked as an architectural engineer, designing and supervising the alteration and rehabilitation of industrial offices. On his 1980 engineering Schedule C petitioner reported $26,543 of total income and claimed the following deductions from this business (also shown) are the amounts that the parties agreed were deductible): Amount
Amount Agreed
Description
Claimed
Deductible
Bank Charges
$ 92
Car & Truck Expense
2,502
Insurance
1,653
Interest
554
$168.26
Laundry & Cleaning
85
Legal & Professional
944
Postage
188
125.00
Rent (office in home)
750
Repairs
2,206
Taxes
102
91.27
Telephone
4,956
Travel & Entertainment
3,061
1,589.76
Post Office Box
28
Printing
76
40.00
Schooling
1,817
Books
178
Messenger
26
Telegrams
134
134.00
Gifts
846
Membership
35
Contributions
65
14.00
Subscriptions
108
72.00
Passport
15
Utilities
146
Tips
312
Total
$20,879
*518 It is respondent's contention that most of these items claimed by petitioner on his Schedule C represent personal expenditures rather than allowable business deductions. Section 162(a) permits the deduction of ordinary and necessary expenses incurred in carrying on any trade or business. However, no deduction is allowed for personal living or family expenses. Sec. 262. There is no question that petitioner was in the office design business. Telephone Expenses and Bank Charges: Petitioner deducted $4,956 in telephone expenses in 1980. However, his telephone bill shows only $4,216.43 in charges. Petitioner explained that this discrepancy was due to a mathematical error. At trial, petitioner estimated that $3,500 of the total telephone charges were for business calls. Due to the voluminous nature of petitioner's 1980 telephone bill presented to the Court, the parties have agreed that the bill for January is a fair representation of petitioner's and his family's telephone usage throughout the year. Therefore, whatever percentage of business use we find for January will be applied *519 to the remaining months to determine the total business usage for 1980. Petitioner also claimed $92 in bank charges. The parties also agreed to apply this same percentage to determine the business portion of petitioner's bank charges. Petitioner testified that he used his home phone to call prospective employers, headhunters and job shops throughout the United States and all over the world in order to find work. In January 1980 he called, inter alia, Alaska (Alaska pipeline project), British Columbia (oil refinery job), and Scotland (fabrication plant job in Spain).He also testified that Mrs. Payne used the telephone to call friends in England and Santa Monica, California, and that his two teen-age sons used the telephone regularly. There are approximately 160 charges listed on the January bill for long distance telephone calls and telegrams totaling $677.65, and approximately 60 local message unit charges totaling $14.40. At the trial, petitioner conceded that $108 for the long distance charges and $2.50 of the local charges were personal in nature and nondeductible. Based upon the entire record herein and the approximation authority vested in the Court, Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), *520 we find that 40-percent of petitioner's January 1980 telephone calls and telegrams were business related. Accordingly, the same percentage of petitioner's 1980 telephone bill of $4,216.43 is deductible and the same percentage of petitioner's claimed $92 in bank charges is deductible. Car and Truck Expenses and Repairs: In 1980 petitioner owned four automobiles: a 1964 Porsche, a 1975 Volvo Station Wagon, a Volkswagon Rabbit and a Ford Pinto. The Porsche was a classic car and was kept in storage. The Volkswagon was used primarily by Mrs. Payne, while petitioner drove the Volvo and the Ford. Neither of petitioner's sons used the cars. Petitioner claimed that 90-percent of his driving was for business. This driving consisted of trips to various job sites. Although petitioner stipulated to receiving gross receipts from six different employers throughout the United States, he provided testimony regarding driving trips to only one employer, Volt Technical Services. Petitioner made four or five round trips in his Volvo to Burlingame, California, while working for Volt. The distance from petitioner's residence in Los Angeles to the work site in Burlingame is approximately 400 *521 miles. He would usually drive to the job site on Sunday night and return the following Friday morning. Petitioner also used his cars for local business trips. Of the $2,502 claimed for car and truck expenses, petitioner could provide receipts for only $1,850.09 in gas and oil purchases and $44 for a road service club. The discrepancy between the amount claimed and the amount substantiated was not explained.Petitioner did not keep any log book of his business driving. Although detailed proof was lacking, using our best judgment we allow petitioner a deduction of $200 for local business transportation. Cohan v. Commissioner,supra.
Section 162(a)(2) allows the deduction of business traveling expenses incurred while away from home. Commissioner v. Flowers,326 U.S. 465, 470 (1946); see also Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). However, deductions for business travel away from home are allowed only if they meet the strict substantiation requirements of section 274(d). With respect to the trips to Burlingame, although *522 petitioner did not keep a log book, the proof that Burlingame was 400 miles away from his home satisfies the substantiation requirements of section 274(d). Smithv. Commissioner,80 T.C. 1165, 1172 (1983). Accordingly under Smith, petitioner is entitled to a deduction for 3200 miles traveled (i.e. 800 miles per round trip times 4 trips) based upon the allowable standard mileage rate in effect in 1980. See Rev. Proc. 80-7, 1980-1 C.B. 590. Petitioner offered no proof regarding his claimed deduction for car repairs. We do not know what kind of repairs were performed, which car or cars were repaired and whether these repairs were somehow related to petitioner's business. Accordingly, petitioner has not met his burden of proof and respondent must be sustained on this item. Travel and Entertainment and Tips: On his 1980 engineering Schedule C, petitioner deducted $3,061 as travel and entertainment expenses. After concessions by respondent of $846 for airline tickets and $743.96 for lodging, $1,471.04 remains in issue. Petitioner testified that this amount was expended for various business meals and provided nine charge card receipts totaling *523 $184.83 as his only substantiation. He also deducted $312 in tips. Petitioner kept no log book of his business meals or tip expenses. For any entertainment expense to be deductible, the taxpayer must substantiate such expense by adequate records (such as an account book or diary, along with documentary evidence such as receipts or paid bills) or by sufficient evidence corroborating his own statement. Sec. 274(d); secs. 1.274-5(a)(3) and (4) and (c)(2), Income Tax Regs. The requirements of section 274(d) supersede our Cohan approximation authority. Sec. 1.274-5(a), Income Tax Regs.
The charge card receipts introduced by petitioner were of little probative value.None of them stated what the charge was for. Accordingly, we cannot say that these documents are enough to satisfy the strict substantiation requirements of section 274(d). Also petitioner presented no evidence with regard to the tips. Therefore, respondent's position must be sustained. Insurance: Of the $1,653 claimed for insurance, respondent has conceded that petitioner has substantiated *524 the following dollar amounts: automobile insurance - $926, life insurance - $326, accident insurance - $30, and Automobile Club of Southern California dues - $30. The difference between the amount claimed on the return and the total of the substantiated items was unexplained by petitioner. The portion of automobile insurance attributable to petitioner's business use of his cars is deductible. Snyder v. Commissioner,T.C. Memo. 1975-221; Guenther v. Commissioner,T.C. Memo. 1975-194. Petitioner testified that the automobile insurance policy in question covered the Volvo and the Volkswagon. Of these two cars only the Volvo was driven for business purposes. As mentioned above, petitioner was able to recall only the trips to Burlingame. Therefore, mindful that we must bear heavily against petitioner for any estimates that we make ( Cohan v. Commissioner,supra), we find that he incurred business related automobile insurance expenses in the amount of $200. Based on the record before us, we must sustain respondent's disallowance of *525 the balance of the claimed insurance deductions. Sec. 1.262-1(b), Income Tax Regs.
Schooling and Books: Petitioner's claimed deduction of $1,817 was comprised of expenses incurred for two separate and distinct educational programs. The first program of study led to petitioner obtaining a Doctor of Institutional Management degree from Pepperdine University. Petitioner completed his final course in 1979. He had taken out a school loan from Crocker Bank in the amount of $3,500 sometime prior to 1980 to pay for his Pepperdine education. In 1980, he made a payment of about $1,200 on the loan and deducted the same amount. In resolving this part of petitioner's schooling deduction we need not reach the issue of deductibility of his Doctoral expenses. Assuming, arguendo, that the Pepperdine courses in Institutional Management were properly deductible educational expenses, we would still have to disallow the deduction as being claimed in the wrong year. When a taxpayer borrows money to make an otherwise deductible payment, the deduction is not postponed until *526 the year in which the taxpayer actually pays off the loan. Granan v. Commissioner,55 T.C. 753, 755 (1971), and cases cited therein. We must sustain respondent's position since petitioner improperly deducted his loan payments in 1980. The balance of petitioner's claimed schooling deduction was made up of $350 tuition for a California bar examination review course, $178 for books and approximately $300 registration fee for the bar examination. Petitioner had graduated from law school in Texas some 20 years earlier. After petitioner took the review course he received a letter from the California Bar informing him that he was ineligible to sit for the exam, and refunding $182 of his registration fee. No reason was given for this rejection. Section 1.162-5(b)(3), Income Tax Regs., disallows the deduction of expenses "for education which is part of a program of study being pursued by [an individual] which will lead to qualifying [the individual] in a new trade or business." Petitioner's bar review course, books and registration fee led to his *527 attempted qualification to practice law and are nondeductible under the above cited regulation. Sharon v. Commissioner,66 T.C. 515 (1976), affd. per curiam, 591 F.2d 1273 (9th Cir. 1978). It is immaterial that petitioner was not allowed to sit for the exam. Cf. Glenn v. Commissioner,62 T.C. 270, 278 (1974). Respondent's position is sustained. Interest: In addition to the amounts conceded by respondent, peititioner testified that he paid interest in 1980 on a $1500, 7-percent loan taken out in 1974. This loan helped petitioner defray his schooling expenses while attending the University of Southern California from 1974 to 1977. Petitioner provided no testimony or proof to show the amount of interest paid on this loan in 1980. Furthermore, we cannot approximate the interest paid under the Cohan rule since we have nothing in the record indicating whether interest was charged evenly throughout the life of the loan or whether any payments were in fact made in 1980. Petitioner has not met his burden of proof on this additional issue, and respondent's disallowance of the amounts not conceded must be sustained. Rent (office *528 at home) and Utilities: Petitioner deducted $750 as an office at home expense on his engineering Schedule C. Section 280A generally disallows a deduction for the business use of a dwelling unit that is used by the taxpayer as a residence. If, however, an allocable portion of the dwelling unit is used exclusively on a regular basis as the principal place of the taxpayer's business, then a deduction may be allowed. Sec. 280A(c)(1)(A). Petitioner testified that he used his basement exclusively as an office. His basement was furnished with a desk, filing cabinets, work tables, and drawing boards.Only petitioner was allowed to use the basement. Petitioner offered credible testimony on this issue. We find that petitioner is entitled to an office at home deduction in the amount of $750 since the office was exclusively used as the principal place of petitioner's engineering business Petitioner also deducted $146 in utilities expense attributable to his basement office. The amount claimed represents approximately 24-percent of petitioner's following 1980 utilities expenses: $309.86 in *529 water and power charges, gas bills of $160.09 and cable television expenses of $135. The utilities expenses attributable to petitioner's office are properly allowable. However, petitioner has not proven that cable television is an ordinary and necessary engineering expense. Accordingly, we find that petitioner may properly claim $114 in utilities on his engineering Schedule C. Messenger and Passport: Based on the record before the Court, we believe that $26 in messenger expenses and $15 passport fee represented ordinary and necessary business expenses and are allowable under section 162(a). Remaining Deductions: With respect to the following items, petitioner did not persuade the Court that they represent anything but nondeductible personal expenses: Laundry and Cleaning - $85, Legal and Professional - $944, Post Office Box - $28, Gifts - $846, and Membership fees - $35. Sec. 262. Respondent's position must be sustained as to these claimed deductions. TAX SERVICE ACTIVITY Turning to petitioner's tax service activity, the underlying issue to be decided is whether such activities constituted a trade or business. Petitioner's tax service activities were in diminishing *530 volume as each year went by. In 1978 he received a total of $510 from nine clients; in 1979 he received a total of $305 from six clients; in 1980 he received a total of $260 from three people, two of whom were friends and the remaining person was a client he had served for many years. Petitioner claimed the following expenses from this activity in 1980: Depreciation
$ 75
Legal and Professional Services
65
Office Supplies
15
Postage
12
Rent on Business Property
248
Telephone
18
Travel and Entertainment
61
Utilities
48
Total Deductions
$542
The phrase "trade or business" is used in many sections of the Internal Revenue Code, and it does not always have the same meaning. But "[u]nder any definition, a business means a course of activities engaged in for profit." 4A Mertens, Law of Federal Income Taxation, Sec. 25.10, at 34 (1985 rev.); IndustrialResearchProducts, Inc. v. Commissioner,40 T.C. 578, 590 (1963). Petitioner has the burden in these circumstances of proving that he had an actual and honest objective of making a profit *531 from his tax service activities. Dreicer v. Commissioner,78 T.C. 642, 646 (1982), affd. without opinion 702 F2d 1205 (D.C. Cir. 1983). The record leaves the Court with the clear impression that for a number of years petitioner had been letting his tax service activity dwindle down, by attrition, to near extinction.At least, by 1980, petitioner no longer had an actual and honest profit objective for his tax services. The record shows no effort by the petitioner to obtain new clients or to replace former clients. By 1980 petitioner simply was not conducting this activity in a businesslike manner calculated to earn a profit. Petitioner failed to satisfy the Court that there was any actual use of his basement office space for his alleged tax service business. Accordingly, his claimed, but unproven, office at home expenses does not militate against our conclusion that the basement office was used exclusively for his engineering business. Since we have found that the tax services did not constitute a trade or business in 1980, all claimed expenses in excess of the gross income of $260 must be disallowed. Section 183 (b). ADDITIONAL ISSUES Although *532 petitioner stated in his petition that: (1) he was not liable for the self-employment tax determined by respondent in the notice of deficiency, and (2) he was eligible to carry back to 1980 a net operating loss generated in 1983, he offered no proof on either issue at trial. Nor did petitioner offer any proof regarding the addition to tax imposed under section 6653(a). Accordingly, petitioner is deemed to have conceded these issues, or at least he has not carried his burden of proof on these issues, and respondent's position must be sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩